BEFORE THE SECOND DIVISION, NOVEMBER 21, 1956

**No. 60368.**—Morgan Mines, Inc. *v.* United States, protest 247509–K (New York)·

LAWRENCE, Judge:   Plaintiff herein contests the classification by the collector of customs of an article of merchandise described on the consular invoice as "Schaerer-Beier-Infinitely variable Gear Type AS 3/15 Nr. 31110 Speed-range 1:4" as a speed control device within the purview of paragraph 368 (a) (1) (2) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (a) (1) (2)) and the assessment of duty thereon at the compound rate of $4.50 each, plus 65 per centum ad valorem.

Three alternative claims are contained in plaintiff's protest, (1) as an article having as an essential feature an electrical element or device in paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, dutiable at 13¾ per centum ad valorem, or (2) as a machine, finished or unfinished, not specially provided for, in paragraph 372 of said act (19 U. S. C. § 1001, par. 372), as modified, *supra*, for which duty is provided at the rate of 13¾ per centum ad valorem, or (3) as a machine tool in said paragraph 372, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and subject to duty at the rate of 15 per centum ad valorem.

Victor Packman, counsel for plaintiff, at his request, was sworn as a witness and testified to the fact that he is an attorney at law, having practiced in the State of Missouri since 1925.   In connection with his practice, he was delegated by the Morgan Mines, Inc., plaintiff herein, to go to Karlsruhe, Germany, to investigate the value of certain items of merchandise, the patents for which were being offered to Morgan Mines, Inc., for manufacture and use of the articles covered thereby in the United States.   He stated that—

* * * The particular items consisted of a new type of gear in which instead of having teeth, male and female parts which activated other parts, it worked on a principle of discs acting as a bridge affected the torque output or the amount of speed rotation of the shaft to which this device might be applied. If in an automobile, it would be in the nature of a transmission; if applied to a lathe, by virtue of certain adjustments, control the amount of direct output which would be taken off the shaft in the way of rotating speeds. The particular items were being manufactured in Karlsruhe, Germany.

I went to the factory where they were being manufactured, which was that of the Schaerer-Werke. I spent several days in the factory watching the manufacturing operations in which these gears were assembled and also saw that the gears were being used in connection with the manufacture of the other gears and that other prototypes were being attached to lathes which were being used to fabricate parts. I communicated with my client who told me that before we were determined upon the contract, that we should purchase one of the items which were then there being manufactured and assembled. I proceeded to do so.

As plaintiff's exhibit 1, there was received in evidence a pictorial representation of the gear in controversy, identified by the letter "a," together with a motor, with which it was assembled at the time of importation, represented by that section of exhibit 1 which is marked with the letter "b."

Packman further testified that—

* * * The future of this particular device as we understood it and as we saw it demonstrated was to act as a different type of a gear in controlling the rotating speed of the shaft if certain parts were readjusted from time to time. It was not automatic; there was a speed indicator to show at what rate of speed the shaft was turning but the rotation speed of the shaft depended upon the distances in which the discs were adjusted by virtue of some twists screws. The rate of speed at which the shaft would turn would depend of course upon the motor connection and the amount of power applied and permitted through the discs which could by virtue of certain positions, permit a faster or slower rotation of the shaft. This device was referred to variously in correspondence which I received and in conversations in Germany as a reducing gear and it showed on the face of the invoice that its ratio was four to one, meaning that it had a range of from one speed to four times as much, depending upon the size.

The Morgan Mines intended to use this machine in connection with a lathe at its mine in Kingman, Indiana, and at the same time determine its usefulness for general purposes—whether applied to printing presses, paper mills or other things in which the control of the rotating speed of the machine might be important. They make parts of metal in connection with their mine operations and in a sense, this gear was to be used as a machine tool adjunct. The gear has no jewels in it; it has no escapement like a watch; it has no main spring; it has no hair spring; it has no minute hand; it has no second hand on it; it has no winding device. * * *

Upon cross-examination, Packman, in answer to a question as to the function of the imported article, stated that "It is a reducing gear. It controlled the rotation of whatever it was applied to" and added that it controls speed, in a sense. He also testified that the variable gear does not vary the output speed of a constant speed motor, but that it varies the input speed.

From careful consideration of the record before us, we do not consider that plaintiff has produced evidence sufficient to make out a *prima facie* case in support of any of its alternative claims. In fact, the evidence adduced rather substantiates the classification of the imported article by the collector of customs as a "speed control device." Packman, who appeared as the only witness on behalf of plaintiff, although experienced for some 30 years in the practice of law, has not been shown to have had training or experience in the engineering field which would qualify him to explain adequately to the court the construction and functioning of the variable gear in controversy, which, from the record, it appears is revolutionary in nature and presently in its experimental stage. The witness' only familiarity with the imported article in issue was gained from

spending "several days in the factory watching the manufacturing operations in which these gears were assembled and also saw that the gears were being used in connection with the manufacture of the other gears and that other prototypes were being attached to lathes which were being used to fabricate parts." Moreover, the exhibit in evidence, although a pictorial representation of the article, does not aid us in understanding its functioning.

Due to the lack of evidence to support the various claims of plaintiff in this case, we are constrained to overrule each of them and to affirm the classification of the collector.

Judgment will issue accordingly.